1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RANDALL LAWRENCE and MICHAEL McCONNELL, | CASE NO. 14cv594-WQH-NLS |
| Plaintiffs, | ORDER |
| vs. | |
| UNITED STATES DEPARTMENT OF THE TREASURY; UNITED STATES BUREAU OF THE MINT; and the UNITED STATES OF AMERICA, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss the Complaint for Failure to State a Claim ("Motion to Dismiss"), filed by Defendants United States Department of the Treasury, United States Bureau of the Mint, and the United States of America. (ECF No. 3).

**I.      Background**

On March 14, 2014, Plaintiffs Randall Lawrence and Michael McConnell initiated this action by filing a Complaint for Declaratory Judgment ("Complaint") in this Court.  (ECF No. 1).

**A.      Allegations of the Complaint**

Plaintiffs are "the owners of a unique United States coin, a 1974-D Aluminum Cent."  *Id*. at 1.  Hundreds of thousands of 1974 Aluminum Cents were minted, and at least dozens of these coins were handed out by the United States Mint to U.S.

Government officials while attempting to persuade Congress to proceed with their use to replace copper pennies in 1974. Congress ultimately decided to not adopt aluminum cents, and the U.S. Mint melted down most of the specimens that were still at the Philadelphia Mint facility, and collected a majority of those that had been distributed in Washington, D.C. to also be destroyed. The Government's records show that no one knows exactly how many aluminum cents were not recovered and are still in existence. "While it is rumored that only a dozen or so Aluminum Cents were minted at the Denver Mint, only Plaintiff's specimen is known to exist at this time." *Id.* ¶ 9. The coins struck in Denver were intermingled with those manufactured in Philadelphia once they reached Washington, and were distributed in a similar manner. Although the U.S. Mint has claimed that no records exist indicating that any Aluminum Cents were authorized to be struck at the U.S. Mint's Denver facility, "the Denver Mint could not have made the Aluminum Cents without a specific order to do so." *Id.* ¶ 38.

Plaintiff Lawrence is the son of the Harry Edmond Lawrence, "who served with distinction for approximately 20 years at the Denver Mint, predominantly in the assistant superintendent's position, retiring as assistant superintendent in 1980." *Id.* ¶ 34. "Harry Lawrence was seconded to Washington, D.C. during 1974, and on information and belief he participated in the various hearings and meetings with Congressmen, Senators and their staff relating to the 1974 Aluminum Cent." *Id.* "Harry Lawrence died in 1980, and Plaintiff Lawrence obtained the 1974-D aluminum cent that is the subject of this action along with his father's other personal property." *Id.* ¶ 35.

On February 26, 2014, the Chief Counsel for the U.S. Mint sent Plaintiffs a letter demanding the return of their aluminum cent. The letter stated that the Government takes the position that, because Congress never issued an aluminum cent as legal tender, any aluminum cent remains property of the federal government, regardless of how long it has been in private hands. A similar letter was sent to the auction house engaged by Plaintiffs to sell the coin.

"Under the Government's theory, it has the legal basis to commence forfeiture proceedings against some of the most valued coins in the numismatic community, whether found in a public or private collection, or offered for sale." *Id*. ¶ 57. "Such a circumstance would be a disaster for numismatists and the public generally. Collectors who acquired patterns and other non-legal tender coins in good faith from dealers, auction houses or other collectors, or as inheritances from other collectors in their families would be forced to prove that they are entitled to retain their coins. In many cases, collectors would be unable to overcome the Government's presumption that their coins were removed from the Mint improperly because records relating to specific coins that left the Mint decades or even a century ago are not available." *Id*.

The Complaint alleges a single count for declaratory judgment. The Complaint requests "a declaratory judgment that the Government's claim to Plaintiffs' Aluminum Cent is invalid." *Id*. ¶ 62.

## B.  Motion to Dismiss

On June 3, 2014, Defendants filed the Motion to Dismiss. (ECF No. 3). Defendants contend that the Complaint fails to state a claim upon which relief can be granted. Defendants contend that "[i]tems made at United States Mint facilities but not lawfully issued, or otherwise lawfully disposed of, remain Government property and are not souvenirs that United States Mint officials can remove and pass down to their heirs.... The item that Plaintiffs hoped to sell at auction as a '1974-D Aluminum Cent' is an unauthorized, unissued piece that was struck at the United States Mint at Denver and unlawfully removed from that facility." (ECF No. 3-1 at 6). Defendants contend that Plaintiffs have not asserted any facts that would support any scenario under which they could plausibly be in lawful possession of the Aluminum Cent at issue. Defendants request that the Court take judicial notice of the letters sent from the Chief Counsel of the U.S. Mint to Plaintiffs and an auction company, a copy of U.S. Mint Regulations from 1970, and the Annual Report of the Director of the U.S. Mint in 1887. (ECF No. 3-2).

1        On July 3, 2014, Plaintiffs filed an opposition to the Motion to Dismiss.  (ECF

2  No. 8).  Plaintiffs contend that dismissal is unwarranted because "[f]actual issues

3  abound and ... the Government, to prove its case, must overcome some major obstacles,

4  including the fact that for well over a century it has permitted and encouraged private

5  ownership of non-issued coins just like the one in this case, which constitute most, if

6  not all, of the most valuable collectible U.S. coins in existence."  (ECF No. 8 at 5).

7  Plaintiffs oppose the request for judicial notice.

8  **II.   Standard of Review**

9        The Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure

10  12(b)(6).  Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief

11  can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a)

12  provides that "[a] pleading that states a claim for relief must contain ... a short and plain

13  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

14  8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a

15  cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See*

16  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

17        "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

18  requires more than labels and conclusions, and a formulaic recitation of the elements

19  of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

20  (quoting Fed. R. Civ. P. 8(a)).  "To survive a motion to dismiss, a complaint must

21  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

22  plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

23  550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

24  content that allows the court to draw the reasonable inference that the defendant is liable

25  for the misconduct alleged."  *Id*. (citation omitted).  "[T]he tenet that a court must

26  accept as true all of the allegations contained in a complaint is inapplicable to legal

27  conclusions.  Threadbare recitals of the elements of a cause of action, supported by

28  mere conclusory statements, do not suffice."  *Id*. (citation omitted).  "When there are

well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

**III.  Discussion**

The Complaint alleges: "This is an action to resolve a dispute between Plaintiffs, the owners of a unique United States coin, a 1974-D Aluminum Cent, and the U.S. Government, which has demanded without proper legal basis that Plaintiffs turn the coin over to the U.S. Mint, and has attempted to interfere in Plaintiffs' legal right to have their coin sold at public auction...." (ECF No. 1 at 1).  The Complaint alleges that the Aluminum Cent at issue was struck at the Denver Mint while Plaintiff Lawrence's father was employed at that facility, and that the Aluminum Cent passed to Plaintiff Lawrence after his father's death. *Id*. ¶¶ 34-35.  The Complaint alleges no other facts surrounding the circumstances under which Plaintiff Lawrence's father obtained the Aluminum Cent.  Mere possession of such a coin is insufficient to establish a legal ownership of the coin. *Cf. Kern Copters, Inc. v. Allied Helicopter Serv., Inc.*, 277 F.2d 308, 313 (9th Cir. 1960) ("Congress has the power to provide for the disposition of property of the United States, and the power must be exercised by the authorized authority, and in the authorized manner....  Inactivity, or neglect, upon the part of Government officers is insufficient to cause the Government to lose its property.") (citations omitted); *Langbord v. U.S. Dep't of the Treasury*, 888 F. Supp. 2d 606, 608, 637 (E.D. Pa. 2012) (declaring, after a jury verdict, that certain 1933 "Double Eagle" coins found "buried at the bottom of [plaintiffs'] family safe deposit box" were "not lawfully removed from the United States Mint and accordingly, as a matter of law, they remain the property of the United States, regardless of ... how the coins came into [plaintiffs'] possession").

The Court finds that the Complaint fails to allege sufficient facts to support the legal conclusions that Plaintiffs are the "owners" of the Aluminum Cent, with a "legal right to have their coin sold at public auction," and that "the Government's claim to Plaintiffs' Aluminum Cent is invalid."  Compl. at 1, 18, ECF No. 1; *see Iqbal*, 556 U.S.

1  at 678.  Accordingly, the Motion to Dismiss is granted and the request for judicial

2  notice is denied as moot.[1]

3  **IV.    Conclusion**

4          IT IS HEREBY ORDERED that the Motion to Dismiss is GRANTED. (ECF No.

5  3).  The Complaint is dismissed without prejudice.  No later than thirty (30) days after

6  the date this Order is filed, Plaintiffs may file a motion for leave to amend the

7  Complaint, accompanied by a proposed first amended complaint.  If Plaintiffs fail to file

8  a motion for leave to amend the Complaint, this case shall remain closed without further

9  order of the Court.

10 DATED:  July 23, 2014

11                                      *William Q. Hayes*
                                       **WILLIAM Q. HAYES**
12                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  ───────────────

28        [1]  Defendants have asserted no affirmative claim for relief in this action.  The Court makes no findings as to the validity of Defendants' legal claim to the Aluminum Cent in Plaintiffs' possession.